UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RPM DISPLAYS, INC.

       Plaintiff-Counterclaim Defendant,

  -v-                                                  5:12-CV-686

OZ MANNEQUINS INTERNATIONAL also
known as BOWE TRADING PTY LTD; OZ
MANNEQUINS USA, INC.; RICHARD PAUL
GOODRICK; and SIMONE BOWE GOODRICK,

       Defendants-Counterclaim Plaintiffs,

  -v-

MAURICES INC.,

       Counterclaim Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| HISCOCK & BARCLAY, LLP<br>Attorneys for Plaintiff and Counterclaim Defendants<br>One Park Place<br>300 S. State Street<br>Syracuse, NY 13202 | MICHAEL A. OROPALLO, ESQ.<br>JOHN M. NICHOLS, ESQ. |
| GOLDBERG SEGALLA<br>Attorneys for Defendants-Counterclaim Plaintiffs<br>5786 Widewaters Parkway<br>Syracuse, NY 13214 | KENNETH M. ALWEIS, ESQ.<br>MOLLY M. RYAN, ESQ. |
| BODKER RAMSEY ANDREWS WINOGRAD<br>  & WILDSTEIN, P.C.<br>Attorneys for Defendants-Counterclaim Plaintiffs<br>One Securities Centre, Suite 1400<br>3490 Piedmont Road, NE<br>Atlanta, GA 30305 | ALISON DANACEAU, ESQ.<br>ROBERT D. WILDSTEIN, ESQ. |

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

RPM Displays, Inc. ("RPM") commenced this declaratory judgment action pursuant to the Copyright Act, 17 U.S.C. §§ 101–1302, against defendants Oz Mannequins International; Oz Mannequins USA, Inc. (collectively "Oz"); and Richard Paul and Simone Bowe Goodrick, the owners of Oz, ("the Goodricks," collectively with Oz, "defendants"). RPM seeks a declaration that defendants' copyrights are invalid; that the mannequins at issue are not copyrightable; and that it has not infringed defendants' copyrights. It also seeks costs and attorneys' fees. Defendants answered and counterclaimed against RPM alleging copyright infringement and unjust enrichment, and against Maurices Inc. ("Maurices") alleging contributory copyright infringement, breach of contract, and unjust enrichment.[1] Defendants also seek attorneys' fees and costs.

Plaintiffs moved for partial summary judgment. Defendants opposed and plaintiffs replied. Oral argument was heard on June 24, 2013 in Utica, New York. Decision was reserved. Discovery is currently stayed pending outcome of the present motion.

## II. FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed. RPM is a mannequin design and production company doing business out of Auburn, New York. Oz is a mannequin design and production company doing business in both Australia and the United States. Maurices is a retail clothing chain based in the United States.

---

[1] RPM and Maurices have agreed to share legal counsel and jointly moved for partial summary judgment. For ease of reference in this Memorandum-Decision and Order, RPM and Maurices will collectively be referred to as "plaintiffs."

In spring 2010, Maurices was looking to have two female mannequins—one junior and one plus-size—produced for use in its stores. According to plaintiffs, Maurices sent out Requests for Proposals ("RFPs") to various mannequin producers, including Oz and RPM. See Oropallo Decl., Ex. 5, ECF No. 40-6. The RFP requested bids for junior and plus-size mannequins and included precise specifications and a photograph of a model in the required pose. Oz was the successful bidder and began consulting with Maurices. Defendants dispute plaintiffs' characterization of the RFP. Exhibit 5 is an email from Matthew Birong, Maurices' Visual Experience Director to Oz (addressed to Paul Goodrick). It discusses the creative design of the plus-size mannequin and attaches a document containing the precise specifications for the plus-size mannequin and a photograph of a model in the required pose. As defendants point out, the email is sent only to Oz, and not to other mannequin producers. Further, it does not indicate that it is a RFP; it does not request bids for mannequins; and it refers only to the plus-size mannequin.

Defendants eventually created the Bella (junior) and Brandy (plus-size) mannequin models (the "Oz mannequins"). On July 19, 2010, Oz and Maurices entered into a purchase agreement, pursuant to which Maurices agreed to purchase junior and plus-size mannequins from Oz. According to defendants, the agreement contained a "Design Rights" provision which specified that Maurices would retain no intellectual property or ownership rights in the Oz mannequins' design and that it was granted only a limited license to use the design. The Oz mannequins were then manufactured and sold to Maurices throughout 2010 and into 2011.

According to plaintiffs, in 2011, Maurices sent out another RFP with the same idea as the previous RFP. RPM was the successful bidder and created its own version of the

requested mannequins—Jasmin (junior) and Susie (plus-size)—in accordance with Maurices' ideas, desired pose, and specifications (the "RPM mannequins"). According to defendants however, Maurices sent the Oz mannequins to a variety of companies including RPM and asked those companies to copy the Oz mannequins, in direct breach of its obligations under the agreement with Oz.

Some time between February 29 and March 2, 2012, the Goodricks viewed RPM's mannequins at the GlobalShop Trade Show in Las Vegas, Nevada. The Goodricks suspected RPM of copying the Oz mannequin design. On March 9, 2012, the Goodricks obtained United States Copyright Registrations for their mannequins, Bella and Brandy (the "copyrights"), with registration beginning on the same date. The copyrights refer to the mannequins as "sculptures."

On March 16, 2012, RPM received a cease and desist letter from Oz, which claimed copyright infringement of the Oz mannequins. The letter advised that RPM's Jasmin and Susie mannequins were virtually identical to Oz's Bella and Brandy mannequins. The letter demanded that RPM "cease and desist from the manufacturing, importation, distribution, exportation, sale, public display, and creation of any derivative, immediately." Compl., Ex. A. The letter further demanded that RPM "sequester any and all Infringing Mannequins or any product or material associated therewith, including tools, for destruction and recall any that are in the marketplace." Id. Maurices received a similar cease and desist letter from Oz on the same date. Oropallo Decl., Ex. 4, ECF No. 40-5. Plaintiffs responded to the letters on April 5, 2013, claiming that the Oz mannequins are not protected by copyright law. Oropallo Decl., Ex. 8, ECF No. 40-9.

Plaintiffs then commenced suit on April 25, 2013, seeking, inter alia, a declaration that the copyrights are invalid.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509–10 (1986). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

When the moving party has met its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; Liberty Lobby, Inc., 477 U.S. at 250, 106 S. Ct. at 2511; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. Liberty Lobby, Inc., 477 U.S. at 248–49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

## IV. DISCUSSION

Plaintiffs move for partial summary judgment on their causes of action for declaratory judgment that defendants' copyrights are invalid and that the mannequins are not copyrightable. They also move for partial summary judgment in their favor on defendants' counterclaims of copyright infringement, contributory copyright infringement, statutory damages, and attorneys' fees. Defendants respond that plaintiffs' motion is premature as discovery is not yet complete; in fact, discovery was not scheduled to close until August 1, 2013, and at the time the instant motion was made, no depositions had yet been conducted. They contend they are not yet in a position to be able to present sufficient evidence to defend the motion for partial summary judgment and ask that the stay on discovery be lifted.

### A. Registration of Copyrights

The validity of defendants' copyrights must be determined to resolve plaintiffs' request for summary judgment on its claims for declaratory judgment and on defendants' counterclaims of copyright infringement.

Under the Copyright Act, a certificate of copyright registration is prima facie evidence of ownership of a valid copyright. 17 U.S.C. § 410(c). However, "a certificate of registration creates no irrebuttable presumption of copyright validity" and any "presumption of validity to a certificate of copyright registration merely orders the burdens of proof." Carol Barnhart, Inc. v. Econ. Cover Corp., 773 F.2d 411, 414 (2d Cir. 1985) (internal quotations omitted); see also Scholz Design, Inc. v. Sard Custom Homes, LLC, 691 F.3d 182, 186 (2d

Cir. 2012) ("[T]he alleged infringer may rebut that presumption.").[2] Defendants enjoy, by virtue of their registrations, a presumption of copyrightability. RPM and Maurices must present evidence sufficient to rebut that presumption.

**B. Copyrightability**

**1. Legal Standards**

The Copyright Act protects "pictorial, graphic, and sculptural works." 17 U.S.C. § 102(a)(5). However, "useful article[s]" are left unprotected by copyright law, Chosun Int'l, Inc. v. Chrisha Creations, Ltd., 413 F.3d 324, 327 (2d Cir. 2005); these are articles "having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information," 17 U.S.C. § 101. It is possible for a useful article to receive protection, however, "only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." Id. Even if such useful articles are aesthetically pleasing, "Congress has explicitly refused copyright protection for works of applied art or industrial design which have aesthetic or artistic features that cannot be identified separately from the useful article. Such works are not copyrightable regardless of the fact that they may be aesthetically satisfying and valuable." Carol Barnhart, 773 F.2d at 418 (internal quotation marks omitted). Although useful articles as a whole are not entitled to copyright protection, "if a useful article incorporates a design element that is physically or conceptually separable from the underlying product, the element is eligible for copyright protection." Chosun Int'l, 413 F.3d at 328.

---

[2] Although RPM and Maurices are the plaintiffs in this case, they are the alleged infringers and would thus usually be the defendants in a copyright infringement action.

In determining whether conceptual separability exists, the Second Circuit has directed that "if design elements reflect a merger of aesthetic and functional considerations, the artistic aspects of a work cannot be said to be conceptually separable from the utilitarian elements. Conversely, where design elements can be identified as reflecting the designer's artistic judgment exercised independently of functional influences, conceptual separability exists." Brandir Int'l, Inc. v. Cascade Pac. Lumber Co., 834 F.2d 1142, 1145 (2d Cir. 1987). To make this determination, "parties will be required to present evidence relating to the design process and the nature of the work, with the trier of fact making the determination whether the aesthetic design elements are significantly influenced by functional considerations." Id. at 1145–46.

The Second Circuit has previously taken up the issue of whether human torso mannequins are strictly utilitarian in nature or if they are protected by copyright law. Carol Barnhart, 773 F.2d at 412. In Carol Barnhart, the parties agreed that the human torso mannequins at issue were useful articles. Id. at 414. Thus, in order to receive protection, the mannequins must "possess artistic or aesthetic features that are physically or conceptually separable from their utilitarian dimension." Id. Otherwise, the mannequins would remain applied art or industrial design—despite being "aesthetically satisfying and valuable." Id. at 418 (internal quotation marks omitted). Congress has repeatedly decided not to extend copyright protection to either of those categories of art and design. Id. The Second Circuit found that "since the aesthetic and artistic features of the Barnhart forms are inseparable from the forms' use as utilitarian articles the forms are not copyrightable." Id.

However, other mannequins, though useful articles, have been found to possess conceptually separable elements which are entitled to copyright protection. See Hart v. Dan

Chase Taxidermy Supply Co., 884 F. Supp. 71, 74 (N.D.N.Y. 1995) (Scullin, J.), vacated, 86 F.3d 320 (2d Cir. 1996), on remand to 967 F. Supp. 70 (N.D.N.Y. 1995) (Scullin, J.), aff'd, 152 F.3d 918, 1998 WL 398812 (2d Cir. 1998) (summary order). The plaintiffs in Hart were designers of taxidermy mannequins used to mount animal skins. They possessed registered copyrights for their animal mannequins and sued the defendant, alleging copyright infringement.

The plaintiffs claimed that the mannequins were "works of artistic creation which realistically and anatomically portray the appearance of animals as conceptualized by the sculptor." Hart, 884 F. Supp. at 74. The defendant claimed that the mannequins were "merely tools for the taxidermist" and thus useful articles not entitled to copyright protection. Id. The district court noted that "merely because the forms can be used by taxidermists to mount skins does not mean that the mannequins are 'useful articles.'" Id. There was evidence that "the sculptors' intent and purpose in creating the animal mannequins at issue was to make lifelike forms and to capture his or her individual perception of the animals." Id. Further, it was conceded that "a taxidermist buys a mannequin which expresses the pose, attitude and appearance of the animal that will satisfy his or her customer." Id. The Court concluded that the "'usefulness' of most animal mannequins is to portray a specific appearance," but that "does not, however, foreclose some animal mannequins from coming within the definition of useful articles." Id.

The district court then conducted a conceptual separability analysis—assuming some animal mannequins were useful articles—to determine "whether there are elements of the mannequins that reflect artistic expression uninhibited by functional considerations." Id. at 75 (internal quotations omitted). It found that such artistic elements were present, as "many

animal mannequins contain an undeniable artistic element—the artists' expression of a lifelike animal." Id. With regard to the artists' expression, the Court explained:

> Part of each mannequin is the artists' conception of what the animal is doing and how that animal would appear while doing that activity. Thus the gestures, pose, attitude, muscle structure and skin wrinkles all represent the artists' expression of the particular animal, and, most importantly, are not required by or do not aid the function of mounting skin. Choosing one pose, attitude, gesture, muscle structure or skin wrinkle over another is not done to "accommodate and further" skin mounting; rather the choice "reflect[s] the designer's artistic judgment exercised independently of functional influences."

Id. (quoting Brandir Int'l, 834 F.2d at 1145). Moreover,

> [c]hanges were made . . . to portray a particular shape, to express an emotion or attribute, to inspire a particular feeling in the viewer, or simply to cast shadows in a particular way. These goals are not constrained by, and in fact are divorced from, the functional consideration of applying animal skin to the mannequin.

Id. Therefore, the mannequins possessed artistic aspects which were conceptually separable from the utilitarian function of mounting an animal skin. Id.

The copyright inquiry, however, does not end with a finding of conceptual separability. A work must also survive the merger doctrine to be copyrightable. See id. Section 102(b) of the Copyright Act provides: "In no case does copyright protection for an original work of authorship extend to any idea . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work." Thus, only the expression of an idea may be protected, not the idea itself. Kregos v. Associated Press, 937 F.2d 700, 705 (2d Cir. 1991). Yet, "even expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself." Id. That is, where there are only a few ways of expressing an idea, the expression merges with the idea, making both the idea and the resulting expression

uncopyrightable.  Hart, 884 F. Supp. at 76.  The aim of the doctrine is to "to prevent an author from monopolizing an idea merely by copyrighting a few expressions of it."  Toro Co. v. R & R Products Co., 787 F.2d 1208, 1212 (8th Cir. 1986).

Most often, a merger analysis is conducted at the time a court is determining whether copyright infringement has actually occurred, rather than whether a copyright is valid at the outset.  Kregos, 937 F.2d at 705; see also Hart, 884 F. Supp. at 76 ("[S]ome courts consider this issue as a defense to whether there has been an infringement of protectible expression, that is, as a way of negating substantial similarity.").  "Assessing merger in the context of alleged infringement will normally provide a more detailed and realistic basis for evaluating the claim that protection of expression would inevitably accord protection to an idea."  Kregos, 937 F.2d at 705.

After finding conceptual separability, the Hart Court examined the three categories of animal mannequins at issue:  fish, full body animal, and animal head and shoulders.  Hart, 884 F. Supp. at 76.  After carefully reviewing all the fish mannequins at issue, Judge Scullin concluded there was "no meaningful detail in the mannequins that is not commanded by the idea of a realistic fish."  Id.  Therefore, "because there are only a few ways in which to express the idea of a realistic fish body in a mannequin, the expression merges with the idea" and the fish mannequins are not copyrightable.  Id. at 77.  However, with respect to the full body and head and shoulders mannequins, Judge Scullin found "the function of the mannequins is merely to portray the appearance of the animal and therefore the mannequins are copyrightable as sculptural works."  Id.  Alternatively, he concluded that even if the function of the mannequins was to mount skins, "the pose, attitude, gesture, muscle

structure, facial expression and skin wrinkles of those mannequins are separable artistic parts" and thus entitled to copyright protection. Id.

The plaintiff designers of the full body and head and shoulders mannequins settled following the decision, but prior to a trial on copyright infringement. The fish mannequin plaintiffs appealed. On appeal, the Second Circuit first reviewed the district court's finding that the fish mannequins were not copyrightable based on the merger doctrine. Hart v. Dan Chase Taxidermy Supply Corp., 86 F.3d 320, 322 (2d Cir. 1996). It explained:

> A court will normally have a more detailed and realistic basis for evaluating the identity between idea and expression if it has all the contested forms of expression before it. For in essence, the merger inquiry asks whether all realistic fish mannequins, no matter how artistic they might be, will necessarily be substantially similar. And only if this is so, is there no unique expression to protect under the copyright laws.

Id. (internal citations and quotations omitted). The Court concluded that the district court considered the merger doctrine too early, because although it examined the plaintiffs' fish mannequins, it did not have the defendants' fish mannequins before it. Noting its preference to examine the merger doctrine at the infringement stage, the Second Circuit explained:

> There may be highly unusual cases in which virtually all of an idea's possible expressions are before a district court at the copyrightability stage. In such rare cases it may perhaps be possible to determine the merger issue while deciding whether a given expression is copyrightable. But we agree with Kregos that this is very unlikely and therefore adhere to our strong preference that the question be decided only after all the evidence of substantial similarity is before the court.

Id. at 322. Thus, at that stage of the proceedings, it could not be said "that all realistic fish are necessarily so similar to each other that to copyright any of them would be tantamount to copyrighting an idea rather than an artistic manifestation." Id. For such a conclusion to be reliably grounded, there must be a broad evidentiary basis "for determining whether the

universe of possible fish mannequins is so narrow as to preclude copyright protection." Id. at 323. The Court concluded that the merger doctrine should be considered only after hearing evidence of substantial similarity. Id. It vacated the lower court's judgment and remanded for a hearing on the issue. Id.

The Second Circuit in Hart also considered the defendant's argument that, regardless of the outcome of a newly conducted merger analysis, the fish mannequins were still not entitled to copyright protection because they were useful articles, like the human torso mannequins in Carol Barnhart, created solely for the purpose of displaying animal skins. Hart, 86 F.3d at 323. The defendant argued that "the 'display' function dictates the shape of the mannequin" for both the fish mannequins and the Carol Barnhart mannequins. Hart, 86 F.3d at 323. The Second Circuit disagreed.

First, in Carol Barnhart, the parties stipulated that the human torsos were "useful articles" that were designed "to display clothes." Carol Barnhart, 773 F.2d at 414, 418. Second, the fish mannequins were nothing like "the headless, armless, backless styrene torsos [which] were little more than glorified coat-racks used to display clothing in stores." Hart, 86 F.3d at 323. Further,

> [t]he torsos were designed to present the clothing, not their own forms. In taxidermy, by contrast, people look for more than a fish skin; they wish to see a complete "fish." The superficial characteristics of the fish, such as its color and texture, are admittedly conveyed by the skin, but the shape, volume, and movement of the animal are depicted by the underlying mannequin. Whether the fish is shown as resting, jumping, wiggling its tail, or preparing to munch on some plankton, is dictated by the mannequin and by its particular form, not by the skin. In short, the fish mannequin is designed to be looked at. That the fish mannequin is meant to be viewed clothed by a fish skin, rather than naked and on its own, makes no difference. The function of the fish form is to portray its own appearance, and that fact is enough to bring it within the scope of the Copyright Act.

Id. (internal citation omitted). Accordingly, the fish mannequins, even if determined to be "useful articles," were copyrightable.

On remand, the district court considered additional fish forms by third party carvers, in addition to the plaintiffs' and defendant's fish mannequins already reviewed. Hart v. Dan Chase Taxidermy Supply Co., 967 F. Supp. 70, 72 (N.D.N.Y. 1997) (Scullin, J.). The Court concluded that "[t]he remarked similarity in appearance of the independent carvers' fish forms, the Defendant's forms and the Plaintiffs' models demonstrate that there are limited options available" to those wishing to express the idea of a realistic looking fish. Id. at 73. Therefore, "[b]ecause there are so few expressive choices for these forms," the idea of a realistic fish and the expression of one merged, and the fish mannequins could not be copyrighted. Id.

Plaintiffs again appealed. The Second Circuit noted its prior concern "with assuring that the district court had before it all relevant other works when it considered merger." Hart v. Dan Chase Taxidermy Supply Co., 152 F.3d 918, 98 WL 398812 (2d Cir. 1998) (summary order). It found that the district court had considered sufficient evidence to determine that "to see one fish mold was to see them all," and affirmed the district court's finding. Id.

### 2. Analysis

Plaintiffs here argue that human mannequins are noncopyrightable "useful articles" because they serve the sole purpose of displaying clothing. They contend that any design elements in the mannequins reflect a merger of aesthetic and functional considerations and are therefore not conceptually separable from the utilitarian elements. Further, they argue that in making the mannequins, Oz merely followed the specifications provided by Maurices and the sculptor was constrained by those requirements; thus he could not exercise his

- 14 -

artistic judgment independently and unencumbered by the functional influences of Maurices' desired pose, measurements and other specifications.

Defendants argue that the mannequins are protected as "sculptures," and even if useful articles, they possess conceptually separable artistic features which are entitled to copyright protection. For example, the photograph of the female model submitted by Maurices to Oz displaying a pose—"a twist of her foot, a swing to her arm, a twist in her hips"—demonstrates that these artistic elements exist independently of their utilitarian function. Defs.' Opp'n Mot. for Summ. J. 21. Moreover, these artistic elements were the input and judgment of defendants' sculptor. Further, defendants contend that their mannequins serve a purpose beyond the utilitarian function of displaying clothing; Maurices intended for them to project a certain attitude and youthfulness to attract customers. They explain that the window mannequin industry is evolving and stores seek made-to-order mannequins which send a specific message to customers and personify their brand.

Plaintiffs also argue that the merger doctrine precludes copyright protection because there are limited ways to express the idea of a human mannequin. Defendants contend the merger doctrine does not preclude copyright protection because there are many ways to express the idea of a human mannequin and theirs is a unique expression of that idea.

It is possible that the mannequins here exist somewhere on the spectrum between the human torso mannequins in Carol Barnhart and the taxidermy animal mannequins in Hart. Summary judgment declaring that the Oz mannequins are or are not "useful articles" is premature. More evidence is needed to determine how much artistic judgment went into the creation of the Oz mannequins and to what extent the mannequins serve a purpose beyond displaying clothing. A determination of whether copyright protection is precluded under the

merger doctrine here is also surely premature. At this early stage, the record does not even include the Oz mannequins in admissible form. There has been no occasion to view plaintiffs' or defendants' mannequins. Conducting a merger analysis on so little evidence would be in direct contradiction of Hart. In addition to consideration of plaintiffs' and defendants' mannequins, it is likely that other modern junior and plus-size mannequins will need to be viewed to determine whether there are so few ways to express the ideas of junior and plus-size mannequins that copyright protection is precluded.

### C. Statutory Damages and Attorneys' Fees

Plaintiffs also seek summary judgment dismissing defendants' counterclaims for statutory damages and/or attorneys' fees because Oz admitted it became aware of the RPM mannequins before the effective date of their copyrights.

The key issue regarding damages is when the infringement commenced. However, without first resolving the question of whether or not the mannequins are protected by copyright law, it is impossible to limit statutory damages for copyright infringement at this time. In the event that the mannequins are protected by copyright law, additional evidence relating to infringement will be necessary.

## V. CONCLUSION

Defendants' copyrights carry a rebuttable presumption of validity because they are registered. In order to overcome this presumption, plaintiffs must meet their burden on summary judgment to show that the Oz mannequins are not copyrightable because they are useful articles and no design elements exist which are conceptually separable from the mannequins' utilitarian function. In sum, RPM and Maurices will have to show that the Oz mannequins are a further extension of the human torso mannequins in Carol Barnhart.

Defendants will need to prove that conceptual separability exists in the mannequins' design and that the mannequins are "designed to be looked at" like the animal mannequins in <u>Hart</u>. They will also need to show that there numerous ways to express the idea of junior and plus-size mannequins, and thus the ideas and expressions do not merge.

More discovery is required to resolve these issues. Upon the completion of discovery, both parties will be permitted to file dispositive motions.

Therefore, it is

ORDERED that

1. Plaintiff RPM Displays, Inc. and Counterclaim-Defendant Maurices Inc.'s motion for partial summary judgment is DENIED without prejudice; and

2. The stay on discovery is LIFTED.

IT IS SO ORDERED.

_____
United States District Judge

Dated: September 4, 2013
      Utica, New York.